# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| Roy A. BOLTON, | : |
| Plaintiff, | : Civil No. 16-5493 (RBK) |
| v. | : **OPINION** |
| Carolyn W. COLVIN, Acting Commissioner of Social Security, | : |
| Defendant. | : |

**KUGLER**, United States District Judge:

This matter comes before the Court on appeal from a decision by the Acting Commissioner of Social Security. (Doc. No. 1.) This case concerns an alleged filing error made nearly a decade ago in a Child's Insurance Benefit application that prevented a claimant from receiving a protective filing date a year earlier than otherwise. Plaintiff claims the name of his minor child, J.B., was on a benefits application made in 2008 and the Social Security Administration failed to register her. SSA argues that J.B. was never on the application and that SSA did not know about the minor child until February 18, 2010, when an application for J.B. was filed. The evidence available suggests that Plaintiff did not express an intent to file on behalf of his minor child until the date in SSA records, and Plaintiff has not met its burden of showing otherwise. Furthermore, the "new and material" evidence that Plaintiff brings before the Court today is neither new nor material, and does not justify remand for further deliberation. As such, the decision of the Commissioner is **AFFIRMED.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

Under Section 202(d) and Section 216(e) of the Social Security Act, 42 U.S.C. §§ 402(d) and 416(e), and 20 C.F.R. § 404.350 of the Social Security Regulations, a child whose parent is on disability is entitled to Child's Insurance Benefits if (a) she is the wage earner's child; (b) she is dependent on the wage earner; (c) an application has been filed on her behalf; (d) she is unmarried; and (e) she is under age 18, subject to some qualifications not relevant here. It is the third requirement—whether an application was filed on behalf of Plaintiff's child, J.B., at a time earlier than February —which is at the heart of this dispute.

Plaintiff contacted a Social Security Administration field office on April 28, 2008, alleging he was disabled by a disc in his neck and back. At that time, he had stated on a form "married no minor or DAC," indicating that he was married with no minor children. Because no appointment was available, a field office employee arranged for him to call back on May 2, 2008, to complete his application. Some time later, Plaintiff called the field office on August 8, 2008, stating he would apply online and would apply for disability insurance benefits under 42 U.S.C. §§ 401-403. Plaintiff states he told the office about J.B.'s application and submitted a form with her name on it. The Court lacks this form, however.

On August 14, 2008, Plaintiff completed an application for disability insurance benefits, in which he had stated "I do not have any children under age 18." A summary of this was sent to Plaintiff, instructing him to "[r]eview the summary to ensure that we recorded your statements correctly." Plaintiff was also told that "[i]f you disagree with any of your statements, you should contact us within 10 days after the date of this notice to let us know."     A few months later, an ALJ issued a decision on the record on December 15, 2009 finding Plaintiff disabled. The

documents submitted to SSA for this determination were destroyed pursuant to internal procedures.

On March 9, 2010, Plaintiff filed an application on behalf of his minor daughter J.B. for Child's Insurance Benefits, with a protective filing date of February 18, 2010. Plaintiff was notified on March 14, 2010 that J.B. was entitled to benefits retroactively extending to February 2009. J.B. thus received 12 months of retroactive benefits from the date of her February 2010 application, pursuant to 42 U.S.C. § 402(j)(1). On May 21, 2010, Plaintiff's attorney faxed to SSA a letter dated May 21, 2010:

> This letter is written to you in regard to [Plaintiff] Roy Bolton. Enclosed you will find the following documents which I wish to submit in support of my client's claim:
> 1. Appointment of Representative form;
> 2. Request for Reconsideration; and
> 3. 1695
>
> We are requesting reconsideration regarding the auxiliary Notice of Award and the onset date utilized for payment of [J.B.]. . . if you have any questions regarding this matter, please feel free to contact us. . . .

The named forms were attached, including a Form SSA-1695, "Identifying Information for Possible Direct Payment of Authorized Fees," which was undated. The Social Security Administration ("SSA") will pay a fee directly to a claimant's representative only if the representative completes the direct payment form (and others) before SSA effectuates a favorable decision that results in past-due benefits. *See* Program Operations Manual System ("POMS") GN 03910.040(F)(2). The direct payment form submitted by Plaintiff (and completed by counsel) stated, under "Information about Other Claimants You Are Representing in Connection with this Claim," J.B.'s name, social security number, and a date of birth clearly indicating her minority. These documents were added to SSA's database on June 15, 2010.

3

Ultimately, Plaintiff appealed the March 14, 2010 decision on behalf of J.B., questioning the month of entitlement (i.e., February 2009) by filing a request for reconsideration. That request was denied on July 8, 2010, on the basis that Plaintiff did not protect the filing date of his child when he filed his own application for DIB on April 28, 2009. The reconsideration determination also found that Plaintiff had stated on his application that he did not have a child under age eighteen or who was disabled, and that the earliest expressed intent to file a claim for J.B. was February 18, 2010, the earliest date within Social Security Administration records documenting contact about her claim.

Plaintiff appealed this as well, seeking a hearing request on July 30, 2010, stating that he disagreed with the reconsideration determination. This was denied on May 10, 2011. Plaintiff thereafter filed a request for review on June 14, 2011 with the Appeals Council, who remanded the application back to the ALJ on September 20, 2013. Remand was found appropriate for the sole reason that a recording of the hearing had been lost. The Appeals Council took no issue with the hearing decision based on the evidence that was available. After the remand hearing, the ALJ issued an April 7, 2014 decision upholding the prior determination. The ALJ noted that Plaintiff's attorney had requested a copy of Plaintiff's application for Disability Insurance Benefits, and copies were sent to Plaintiff. Social Security Administration records indicated that a form SSA-1695 completed by Plaintiff had been added to its database on June 15, 2010.

Plaintiff pointed to a few items suggesting he had properly filed a protective application. The ALJ evaluated testimony by Plaintiff, who stated he had discussed filing for J.B. with his attorney as part of his claim for Social Security benefits. At the prior April 19, 2011 hearing, Plaintiff had testified he had discussed with his attorney the issue of J.B.'s benefits, and believed

4

J.B.'s name was on the application. At that same 2011 hearing, Plaintiff's attorney similarly stated that his office had listed J.B. on the application as a child under age eighteen.

Much else weighed against this evidence. The ALJ noted that Plaintiff's prior application for Disability Insurance Benefits on April 28, 2008 did not contain any mention of a minor or disabled child, and he answered negatively to a specific question which asked whether he had a child under age 18 or who was disabled before 22. He noted that a "Report of Contact" dated March 9, 2010 by Ms. Joan Benedict, a Social Security Administration Claims Representative. It stated that when Plaintiff filed for disability insurance benefits, he had listed a wife, but no children. The Administration also had records of "Worksheet Remarks," which documented Plaintiff was "married no minor or DAC." The ALJ interpreted this language as indicating that the issue of an eligible child on the record was considered.

Two other items the ALJ considered were an "Affidavit of Anita C. Selinsky," dated April 19, 2011, and a "Client Questionnaire." Both concerned the appearance of Plaintiff at his counsel's law firm on August 11, 2008. The affidavit stated that Ms. Selinsky, the office manager of the firm, had reviewed Plaintiff's information and filed the application on his behalf on that date. It stated that Plaintiff had written on the internal office document "Client Questionnaire" that he had three children, one of whom, J.B., was under age eighteen. However, the ALJ noted that while Plaintiff provided birth dates for two of his children on this questionnaire, he did not put the birthdate of J.B., and therefore "there appear[ed] to be no supporting evidence for Ms. Selinsky's statement that [Plaintiff] reported having a minor child on this internal questionnaire."

In light of this, the ALJ determined that the earliest evidence of there being an intent to file a claim on behalf of J.B. was February 18, 2010. That meant that J.B. was entitled to benefits

5

retroactive to February 2009, not earlier. This decision was affirmed by the Appeals Council on November 25, 2015, and Plaintiff has appealed to this Court pursuant to 42 U.S.C. § 405(g).

Plaintiff today presents what he terms "new and material evidence," which is (1) a seven-year-old letter from the Glassboro Field Office, and (2) another affidavit from Ms. Selinsky, signed January 15, 2016. The letter is dated March 31, 2009, and was apparently received by the Plaintiff's attorney on April 2, 2009. It confirms that Plaintiff appointed Jason Thompson, Esquire, as counsel, as well as confirming receipt of Form SSA-1695. The affidavit states that in 2008 Ms. Salinsky helped Plaintiff file his application online and that J.B. was listed on that application. It also stated she faxed a SSA-1695 to SSA that stated J.B.'s name.

## II.    STANDARD OF REVIEW

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision was supported by substantial evidence, after reviewing the administrative record as a whole. *Zirnsak*, 777 F.3d at 610 (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *See, e.g.*, *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if this court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

This Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). This Court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See Schonewolf v. Callahan*, 927 F. Supp. 277, 284–85

(D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114). A district court's review of a final determination is a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

## III. DISCUSSION

The issue before the ALJ was whether an application was filed on behalf of J.B. such that she would receive a protective filing date earlier than February 2009, and thereby receive those benefits as well. *See* 20 C.F.R. § 404.350(a). "If certain criteria are met, protective filing is established on the date SSA receives a written statement of intent to file for disability insurance benefits . . . ." POMS GN 00204.010(A)(1), http://policy.ssa.gov/poms.nsf/lnx/0200204010 (last visited Nov. 17, 2017). POMS provides guidelines for establishing an intent to file, noting that "the expression of intent need not be on a specific form, or in a particular format," but that if it is made orally, "it must be documented and signed." POMS GN 00204.010(B)(1). We note, however, that while POMS guidelines warrant respect, they "do not have the force of law." *Edelman v. Comm'r Soc. Sec.*, 83 F.3d 68, 71 n.2 (3d Cir. 1996).

We review whether the ALJ had substantial evidence to determine that Plaintiff did not express a written intent to file for J.B.'s benefits until February 18, 2010. The ALJ did. The ALJ relied on SSA records that said as much, and we need not repeat them again when so many others have already. Plaintiff believes that he filed earlier, and points to some contemporaneous documents indicating as much. These are insufficient. The Form SSA-1695 that Plaintiff argues

7

establishes the earlier filing date lacks a date, which is a vital piece of evidence when the primary dispute in this case is the date of filing. The others are contemporaneous to Plaintiff's filing for his own benefits, but they lack the daughter's name, which again makes it impossible to determine whether they corroborate what Plaintiff claims they said. It is true that Plaintiff argues that a printer malfunction prevented him from getting a copy of his earlier application and therefore did not discovery an error by SSA until 2010. But the ALJ heard that too, and deemed that insufficient as well.

Plaintiff also argues the ALJ was mistaken when he stated Form SSA-1695 was not submitted to the agency until 2010, because Plaintiff's counsel had received statutory fees that are only dispensed after receipt of that form. But Plaintiff is too cute by half: no one disputed that Form SSA-1696 was submitted *on behalf of Plaintiff Roy Bolton*. What is at issue is whether Form SSA-1695, or other documents, were submitted and indicated J.B. was applying for benefits. And that payment of fees does not resolve that issue in favor of Plaintiff.

We hold that in light of the SSA records available to him, the ALJ had substantial evidence to conclude the earliest intent to file a claim for JB was February 18, 2010. We therefore will not disturb the Commissioner's decision.

Plaintiff also requests that this Court remand pursuant to 42 U.S.C. § 405(g), arguing he has presented new and material evidence that was not submitted to the ALJ for good cause. Plaintiff is mistaken. The evidence he wishes to submit is simply not new. The first item is a letter from the Commissioner's Glassboro District Office dated April 2, 2009. Plaintiff's counsel received this letter on April 2, 2009. That is not new. Moreover, the letter is silent on whether an application was filed for J.B. That makes it not material, too. As for the affidavit, it relates the

events of the filing of the 2008 application, and is evidence that was previously available, and indeed largely made available, to the ALJ. Remand is not appropriate in these circumstances.

**IV.     CONCLUSION**

For the reasons stated herein, the Commissioner's decision is **AFFIRMED**. An order follows.


Dated:        11/20/2017                                                                    s/ Robert B. Kugler
                                                                                            ROBERT B. KUGLER
                                                                                            United States District Judge